UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK THOMAS HATCHER | CIVIL ACTION NO.:   11-0116 |
| | SECTION:  "N" |
| VERSUS | MAGISTRATE:   01 |
| ST. TAMMANY JAIL | JURY DEMAND |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**PURSUANT TO RULE 56(b)**
**OF FEDERAL RULES OF CIVIL PROCEDURE**

**MAY IT PLEASE THE COURT:**

**Introduction**

Plaintiff Mark Thomas Hatcher has brought this lawsuit, based on 42 U.S.C. § 1983

and accompanying state-law claims, against the following defendants: Rodney J. Strain, Jr.,

individually and in his capacity as Sheriff of St. Tammany Parish ('Sheriff Strain'); Major

Gregory Longino, an employee of Sheriff Strain and an officer with the St. Tammany Parish

Sheriff's Office ('STPSO') who at all relevant times has served as Warden of the St. Tammany

Parish Jail ('the Jail'); Corporal Patrick Smith, a deputy employed by Sheriff Strain and the

STPSO who at all relevant times was assigned to the Jail; and Dr. R. Demaree

Inglese, a physician employed by Sheriff Strain and the STPSO who at all relevant times has served as Director of the Jail's Medical Department.

This *pro-se* prisoner suit seeks redress in the way of money damages for alleged civil-rights violations based on claims of failure-to-protect and insufficient medical care.  At all relevant times herein, the plaintiff was a pre-trial detainee in the custody of Sheriff Strain and being held at the Jail.   Specifically, the plaintiff claims to have been assaulted by a fellow inmate named Brandon Strickland, and that this inmate's threats against him had been communicated to Jail personnel, both by himself and other inmates (Rec. doc. 29, at ¶¶ 10-19).  He also asserts that he received deficient and inadequate medical care from defendant Dr. Inglese and the Jail Medical Department for the injuries he allegedly sustained in the assault (*Id.*, at ¶¶ 20, 32; Rec. doc. 5).  As to Sheriff Strain, the plaintiff makes vague allegations of "policies and customs" that he asserts either created or allowed the constitutionally-deficient conduct (Rec doc. 29, at ¶ 36).  Finally, the plaintiff raises state-law tort claims against the defendants (*Id.*, at ¶¶ 40-45), he claims that Sheriff Strain and Major Longino should be held vicariously liable under state law for the actions of their deputies (*Id.*, at ¶¶ 46-47), and he asserts a state-law spoliation of evidence regarding video surveillance of the alleged assault (*Id.*, at ¶¶ 48-49).

While the defendants all vehemently deny the substance of the plaintiff's factual allegations against them, the instant motion is based largely on simple procedural grounds. First, the plaintiff's § 1983 claims against the defendants are barred by his failure to comply with the conditions of the Prison Reform Litigation Act of 1996 (42 U.S.C. § 1997e) by failing to exhaust his administrative remedies prior to filing this lawsuit.  Second, his federal-law claims against the defendants are barred by application of the qualified-

immunity doctrine.  In addition, the plaintiff's assertion of *Monell*-type liability against Sheriff Strain and/or Major Longino has an inadequate factual and legal basis. Consequently, the plaintiff's federal-law claims against the defendants are legally unjustified and without merit, and they should be dismissed pursuant to this Motion.  The Court should then either dismiss the remaining state-law claims on the same grounds as the federal-law claims, or it should decline to exercise pendent jurisdiction over the state-law claims, and in either way dismiss the suit entirely.

The matter has been pending for more than a year, since January 20, 2011, and the plaintiff has been afforded the opportunity to conduct full discovery.  In addition, the defendants' arguments herein are largely based on the application of legal principles, as opposed to contested factual issues, and are unlikely to be impacted by further discovery. After this Honorable Court reviews the record of this matter in light of this Motion and the moving defendants' supporting argument, and it notes the total lack of relevant countervailing evidence able to be tendered by the plaintiff, the Court should grant the instant motion and dismiss this suit.

## **Summary of Relevant Facts**

The plaintiff brings this now-*pro se* complaint alleging that he was attacked by fellow inmate Brandon Strickland and that the medical care he received for the physical injuries arising from the attack was untimely and/or inadequate.[1]  In plaintiff's initial Complain (Rec. doc. 1), his amended Complaint (Rec. doc. 5), and his Second Amended

---

[1]    This factual summary is based on Defendants' Statement of Uncontested Material Facts, also filed in connection with the instant motion.  That Statement contains numerous citations and references to the various exhibits supportive of each particular factual assertion.  In the interest of efficiency and clarity, those citations and references are not repeated here.

Complaint (Rec. doc. 29), he set forth the 'facts' regarding the alleged attack and deficient medical attention.   He asserts that on August 21, 2010, he was "blind sided" by inmate Strickland, who had a history of violent behavior and a personal vendetta against the plaintiff, while they were both housed in the protective-custody area at the Jail.  He also alleges that prior to the attack, he informed a "Corporal Lablaunt" about threats from inmate Strickland and that other inmates told a total of five or six deputies about inmate Strickland's behavior.  He further claims that his right eye was injured in the attack, but that Jail medical staff and deputies were lax in their response to and treatment for that injury.

The core of plaintiff's claims is that the defendants failed to protect him from another inmate who allegedly had a known propensity for violence and had made threats against the plaintiff, and that he failed to receive proper medical treatment for the injuries he sustained during the alleged attack.  But, as to the attack, the plaintiff has failed to provide a number of critical pieces of information, including but not limited to the names of the inmates that allegedly informed deputies of inmate Strickland's behavior and threats, the names of the deputies that supposedly received those warnings, the specific nature of the warnings, or the dates that this purported information was relayed to the deputies.

In addition, the plaintiff has failed to offer a single bit of documentary evidence or sworn testimony to support, substantiate, validate, or confirm his own self-serving allegations concerning these matters, despite a specific discovery request for such information.  Finally, the plaintiff fails to allege, much less offer proof, that any of the defendants had any first-hand, personal knowledge of or involvement with the relevant facts *prior* to the alleged attack itself.

As to plaintiff's claims of deficient medical care, the affidavit of defendant Dr. Inglese clearly establishes that the plaintiff did in fact receive all appropriate medical care during his entire tenure at the Jail.  The plaintiff's medical records from the Jail demonstrate that he was seen numerous times by doctors and other medical personnel who were decidedly not indifferent to his medical needs.  Plaintiff has not yet identified any expert opinion or any other evidence whatsoever other than his own allegations to challenge or contradict Dr. Inglese's conclusions.  Thus, the uncontested facts show that plaintiff was not denied proper medical treatment; to the contrary, the plaintiff received competent and sufficient medical care for the alleged injuries he sustained during the claimed assault.

Furthermore, plaintiff correctly pleads in his complaint that there was a grievance procedure in place at the Jail, and he alleges that he presented the facts relating to the instant lawsuit by way of that grievance procedure prior to filing his lawsuit (Rec. doc. 3, at ¶ IIB).  But he failed to attach copies of any such complaints or grievances concerning the incidents upon which his lawsuit is based, and has failed to produce any such documentation in response to specific discovery requests.  His administrative and medical records from the Jail clearly show that he did not complete all steps of the jail's administrative remedy procedure even as to the unrelated grievances he did file.

Under the policies and procedures of the Jail as established by Sheriff Strain, an inmate can request medical attention from the medical department in several different ways, including filling out a medical request form and dropping it in a box where the forms are then picked up by the medical department and not seen by any deputy, by asking a deputy to be taken to the medical department, or by asking a nurse from the medical department who comes on each tier or dormitory of the jail three times a day.  The Jail has

a complaint procedure and grievance procedure in place and any complaint or grievance

received concerning medical treatment provided to inmates is forwarded directly to the

medical department for their response in accordance with the Jail's grievance procedure.

### Summary Of Supporting Evidence

In support of this motion, the defendants submit the following documents:

1.      Copies of the complete Jail administrative file regarding the plaintiff (Exhibit "A");

2.      Affidavit of STPSO Major Greg Longino, the Warden of the Jail, with attached copy of the summary of complaint procedure and grievance procedure in place at the Jail, and blank complaint form and forms used in that grievance process (Exhibit "B");

3.      Affidavit of defendant Dr. Inglese, with attached copies of his C.V. and a narrative report detailing the plaintiff's medical care at the Jail (Exhibit "C");

4.      Certified copies of the complete Jail Medical Department file regarding the plaintiff (Exhibit "D"); and

5.      Plaintiff's Responses to Defendants' First Set of Requests for Production to Plaintiff (Exhibit "E").

It is respectfully submitted that these documents, along with the pleadings in this

matter, clearly and fully support the facts set out in this Motion and serve to demonstrate

that the claims being made herein by the plaintiff are legally deficient so as to call for the

dismissal of plaintiff's lawsuit.

### Law and Argument

### *1.    The Standard For Granting Summary Judgment*

In considering a motion for summary judgment, this Honorable Court should grant

the motion when no genuine issue of material fact exists and the mover is entitled to

judgment as a matter of law.  Fed.R.Civ.P. 56(c).  *See also Nickell v. Beau View of Biloxi, L.L.C.*,

636 F.3d 752, 754 (5th Cir. 2010); *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 373 (5th

Cir. 2001), *cert. denied* 535 U.S. 954, 122 S.Ct 1357, 152 L.Ed.2d 353 (2002); *Alfonso-Ferro v. Stolthaven New Orleans, L.L.C.*, 2005 WL 1309133, *2 (E.D.La. 2005).

As a general rule, the moving party has the initial burden of establishing that there are no issues of material fact and that it is entitled to judgment in its favor as a matter of law. *Breen v. Texas A&M University*, 485 F.3d 325, 331 (5th Cir. 2007); *Rivera v. Houston Independent School District,* 349 F.3d 244, 246-47 (5th Cir.2003).  Thus, the party moving for summary judgment "bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Adams v. Travelers Indemnity Company of Connecticut*, 465 F.3d 156, 163 (5th Cir. 2006).  *See also Taita Chemical Company, Ltd. v. Westlake Styrene Corporation*, 246 F.3d 377, 385 (5th Cir. 2001).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion.  Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude summary judgment.  *Taita Chemical*, *supra*.  *See also Roberts*, *supra*; *Condiff v. R.D. Werner Company, Inc.*, 2003 WL 21977167, *1 (E.D.La. 2003).

Once the mover's initial burden is satisfied, the party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' and must designate 'specific facts showing that there is a genuine issue for trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), quoting Fed.R.Civ.P. 56(e).  *See also Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006); *In re Ark-La-Tex Timber Company, Inc.*, 482 F.3d 319 (5th Cir. 2007).  A fact is material only when it might affect the outcome of the suit under the governing law, and a fact is genuinely in dispute

only if a reasonable jury could return a verdict for the nonmoving party.  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

Put another way, the plaintiff in this matter cannot simply rest on the allegations in his pleadings in the face of a properly-supported and -reasoned summary judgment motion; "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  *See also Celotex Corporation*, *supra* at 325-26, 106 S.Ct. at 2554.  In addition, conclusory allegations unsupported by specific facts will not prevent granting of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint.  *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010), *cert. denied* --- U.S. ---, 131 S.Ct. 355, 178 L.Ed.2d 149 (2010); *National Association of Government Employees v. City Public Service Board*, 40 F.3d 698, 713 (5th Cir. 1994).

In fact, the Fifth Circuit requires the nonmoving party to tender what it has called "significant" and "probative" evidence in order to rebut a properly-supported summary-judgment motion.  *Whitt v. Stephens County*, 529 F.3d 278, 283 n. 8 (5th Cir. 2008).  And, once again, conclusory allegations and unsubstantiated assertions by the nonmovant simply are not sufficient.  *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 345 (5th Cir. 2007); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006).  Since "conclusory allegations" and "unsubstantiated assertions" make up the bulk of the plaintiff's claims in this case, this case is one that is especially ripe for summary judgment.

As the Fifth Circuit has declared: "After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). *See also Caboni v. General Motors Corporation*, 278 F.3d 448, 451 (5th Cir. 2002); *Texaco Exploration and Production, Inc. v. Amclyde Engineered Products*, 2008 WL 957652, *5 (E.D.La. 2008). Also, the Court has no duty to search the record for triable issues. *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Mere assertion of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Abbot v. Equity Group, Inc.*, 2 F.3d 613, 619 (5th Cir. 1993). In fact, according to the Fifth Circuit, factual controversies should be construed in the light most favorable to the nonmovant only if both parties have introduced evidence showing than an actual controversy exists. *Murray v. Earle*, 405 F.3d 278, 284 (5th Cir. 2005); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998).

Thus, in order to prevail on the instant motion, the defendants need not resolve every possible factual dispute or answer every possible question about the plaintiff's allegations. They are instead required to present, address, and demonstrate only those uncontradicted facts necessary to defeat an essential element the plaintiff's cause of action, in light of the analysis discussed below. Because they clearly can do so in this case, the instant motion should be granted and the plaintiff's suit against the defendants should be dismissed.

### 2.   *Plaintiff Failed To Exhaust The Administrative Remedies Available To Him Prior To Filing Suit*

As is collectively demonstrated by plaintiff's Jail administrative file, Jail medical records, the affidavit testimony of Warden Longino, and the affidavit testimony of Dr.

Inglese, plaintiff unquestionably failed to exhaust the administrative remedies available to him at the Jail before filing his complaint.  The applicable provision of the Prison Litigation Reform Act of 1996 ("PLRA") reads as follows:

> No action shall be brought with respect to prison conditions under § 1983 of this title or any other law or any other Federal law by a prisoner confined in a jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  *See also Johnson v. Ford*, 261 Fed.Appx. 752, 755 (5th Cir. 2008); *Campfield v. Tanner*, 2011 WL 4368723, * 2 (E.D.La. 2011).

According to the U. S. Supreme Court, the purpose of the PLRA is "to eliminate unwarranted federal-court interference with the administration of prisons, and thus [it] seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93, 126 S.Ct. 2378, 2387, 165 L.Ed.2d 368 (2006)(internal quotations omitted).

In *Underwood v. Wilson*, 151 F.3d 292, 293 (5th Cir. 1998), the Fifth Circuit, while holding that the requirement to exhaust administrative remedies was not jurisdictional, held that if a plaintiff had not exhausted his administrative remedies, dismissal with prejudice was the correct action under the statute.  The court pointed out that if a plaintiff filed suit before exhausting his administrative remedies, then plaintiff sought relief to which he was not entitled.  *See also Dillon v. Rogers*, 596 F.3d 260, 272 (5th Cir. 2010)(exhaustion is a "threshold" issue); *Magee v. Crowe*, 2011 WL 1437183, ** 5-6 (E.D.La. 2011).

The Fifth Circuit, in *Wendell v. Asher,* 162 F.3d 887 (5th Cir. 1998), specifically held that "prison condition" actions required the application of the exhaustion requirements set forth in § 1997e(a).  In *Booth v. Churner,* 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958

(2001), the U. S. Supreme Court upheld the district court's dismissal of plaintiff's § 1983 action by holding that exhaustion of all remedies was mandatory prior to filing his suit. The Court further held that exhaustion was required regardless of the relief available or sought.

Although *Booth* is a case dealing solely with a prisoner's excessive force claim, the Fifth Circuit has made it clear on several occasions that *Booth* expressed that exhaustion of available remedies are required regardless of the nature of the prisoner's claim about the correctional facility and regardless of the relief the prisoner seeks.  For example, in *Wright v. Hollingsworth,* 260 F.3d 357 (5th Cir. 2001), the court declared:

> Quibbles about the nature of a prisoner's complaint, the type of complaint, the type of remedy sought, and the sufficiency or breadths of prison grievance procedures were laid to rest in *Booth.*

The U. S. Supreme Court in *Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), made it clear that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  The Fifth Circuit cited *Porter* in its decision in *Clifford v. Gibbs*, 298 F.3d 328, 330 (5th Cir. 2002), affirming another division of this Honorable Court's decision dismissing an inmate's failure-to-protect case for failure to exhaust administrative remedies.

In this case, as stated by Warden Longino (Exhibit "B"), the Jail had an inmate complaint procedure and an administrative remedy procedure in place at the time the alleged incident occurred and that these procedures are found in the inmate handbook which is given to every inmate that is booked into the Jail.  Warden Longino's affidavit further establishes that both the complaint procedure and grievance procedure are posted

in every housing unit at the Jail, including the housing unit where the plaintiff was housed during his incarceration there. *Id.* In addition, the affidavit of Warden Longino establishes that at the time the events giving rise to this lawsuit occurred, copies of the complaint forms and grievance forms were available in all housing areas of the jail, including the area where the plaintiff was being housed. *Id.*

A review of plaintiff's administrative jail file (Exhibit "A") and medical records (Exhibit "D") from the Jail indicate that plaintiff did not file a complaint or grievance regarding his claim that deputies had failed to protect him from another inmate or his allegation that he had been denied medical treatment for the injuries he allegedly sustained in that attack. These facts are further supported and reiterated by the affidavits of Dr. Inglese (Exhibit "C") and Warden Longino (Exhibit "B"). They are also supported by the plaintiff's own statement. In response to a written discovery request for copies of any and all documents evidencing plaintiff's compliance with the PLRA, he declared: "These documents are being held by plaintiff by an inmate confined in another facility. Plaintiff has requested those documents and, upon receipt of them, will forward same to Defendants." Exhibit "E", Response to Request No. 9. Undersigned counsel for the defendants have never received these purported documents.

Even assuming that plaintiff had filed a grievance (which is denied), the filing of the purported grievance at most *initiated* the grievance procedure; however, it did not *exhaust* his remedies as required by 42 U.S.C. 1997e(a). In *Underwood v. Wilson,* 151 F.3d 292, 294, (5th Cir. 1998)(*quoting* Webster's New Int'l Dictionary 796, [3rd ed. 1981]), the Fifth Circuit defined *exhaust* as "to take complete advantage of (legal remedies)." Clearly, the filing of a First Step grievance does not constitute exhaustion since § 1997e(a) requires that an

inmate "pursue the grievance remedy through conclusion" in a multi-step grievance process. *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001).

This Honorable Court has itself expressly determined that failure to receive a response does not relieve a prisoner from his obligation to pursue all available administrative remedies to their conclusion. In *Cassisi v. St. Tammany Parish Medical Staff, et al.,* USDC, E.D.La., No. 01-3452 "J" (1), the Court granted defendants' motion for summary judgment and dismissed plaintiff's case based on plaintiff's failure to exhaust his administrative remedies and, in doing so, held as follows:

> To allow plaintiff, who clearly did not proceed beyond the first step of the multi-step administrative remedy procedure, to proceed directly to federal court would undermine the congressional intent of § 1997e(a).

*Id.*, at Rec. doc. 66, p. 9.

Thus, it is undisputed that even if plaintiff had filed a grievance concerning either his failure-to-protect claim or his inadequate medical treatment claim (which is denied), plaintiff failed to pursue any supposed grievance to the next step of the grievance process. As a result, it is clear that this Court should grant defendants' motion for summary judgment and dismiss plaintiff's claims on this ground alone.

### 3.   *Defendants Are Entitled To Qualified Immunity*

A qualified immunity defense in civil rights litigation "serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *Thompson v. Upshur County,* 245 F.3d 447, 456 (5th Cir. 2001); *see also Kinney v. Weaver,* 367 F.3d 337, 349 (5th Cir. 2004)(en banc)(discussing the important goals served by the qualified immunity

doctrine). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002).  *See also Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009).

In addition, in the face of the assertion by a defendant public official of the defense of qualified immunity, a § 1983 plaintiff must comply with a heightened pleading standard. This heightened pleading standard "requires more than conclusory assertions. It requires claims of specific conduct and actions giving rise to a constitutional violation." *Burge v. Stalder*, 54 F. App'x 793 (5th Cir. 2002); 2002 WL 31845179, *3, citing *Baker v. Putnal,* 75 F.3d 190, 195 (5th Cir.1996).  *See also Harold v. City of New Orleans*, 2008 WL 5216223, *2 (E.D.La. 2008)(Duval, J.).

To discharge these burdens, a plaintiff must satisfy a two-prong test, which after *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) can be considered in either sequence.  According to the first prong, the plaintiff must adequately establish that the defendant committed a constitutional violation under current law.  *See, e.g., Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *Palmer v. Johnson,* 193 F.3d 346, 351 (5th Cir. 1999).  Second, the plaintiff must prove that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time the actions complained of occurred.  *Atteberry v. Nocona General Hospital*, 430 F.3d 245, 253 (5th Cir. 2005).  This bifurcated legal standard is designed both to promote clearer standards for official conduct and to spare defendants unwarranted liability and court costs.  *See Wilson,* 526 U.S. at 609.  In this matter, while the plaintiff has alleged in a conclusory and generalized manner the existence of a constitutional violation

and the unreasonableness of the defendants' actions, he has utterly and completely failed to offer anything at all beyond his bald allegations in satisfaction of the two-pronged test.

Government officials performing discretionary functions are entitled to qualified immunity from civil liability to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). For qualified immunity purposes, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Johnson v. Johnson,* 385 F.3d 503, 524 (5th Cir.2004)(quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987)). Put in slightly difference words, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar County, Texas*, 560 F.3d 404, 410 (5th Cir. 2009).

It is well established that prison officials have a general constitutional duty to protect prisoners from violence at the hands of their fellow inmates. *See Farmer v. Brennan,* 511 U.S. 825, 832-33, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994). But, under *Farmer,* an inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were deliberately indifferent to an inmate's safety in order to constitute a constitutional violation. *Id.* at 834, 114 S.Ct. at 1977. An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate . . . safety" and disregards that risk. *Id.* at 837, 114 S.Ct. at 1979. Thus, prison officials are not liable for all inmate-on-inmate violence; they are only liable if they are deliberately

indifferent to a substantial risk of serious harm.  *Id.*, at 833-34, 114 S.Ct. at 1976-77;

*Rodriguez v. Lozano*, 108 Fed.Appx. 823, 828 (5th Cir. 2004).

In this context, an officer's awareness of the risk is evaluated subjectively. "[T]he

official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists" and must in fact also have drawn the inference.

*Longoria v. Texas*, 473 F.3d 586, 592-93 (5th Cir. 2006).  In *Brooks v. Stringer*, 303

Fed.Appx. 225, (5th Cir. 2008), the Fifth Circuit affirmed the application of qualified

immunity as to a prison official in reference to an inmate-on-inmate injury because she

subjectively determined that the injured inmate would not be in danger.

As to the second of the two-pronged test–whether the defendant's conduct was

objectively reasonable–the courts "consider an official's conduct to be objectively reasonable

unless all reasonable officials in the defendant's circumstances would have then known that

the conduct violated the Constitution." *Gates v. Texas Department of Protective & Regulatory*

*Services*, 537 F.3d 404, 419 (5th Cir. 2008).  *See also Hamilton v. Oktibbeha County Sheriff*

*Department*, 480 F.3d 358, 363 (5th Cir. 2007).  This inquiry must be undertaken in light of

the specific context of the case, not as a broad general proposition.  *Mesa v. Prejean*, 543

F.2d 264, 269 (5th Cir. 2008).  If reasonable public officials could differ as to whether a

defendant's actions were lawful, the defendant is entitled to immunity, even if the

defendant's conduct actually did violate the plaintiff's constitutional rights.  *Zarnow v. City of*

*Wichita Falls, Texas*, 500 F.3d 401, 408 (5th Cir. 2007); *Pfannstiel v. City of Marion*, 918 F.2d

1178, 1183 (5th Cir. 1990).

In this matter, the plaintiff alleges that unidentified jail deputies failed to protect

him from an attack by another inmate; however, in order to show that any sheriff's deputy

violated his constitutional rights, plaintiff would have to prove that the deputy acted with deliberate indifference toward a known risk of injury to plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 688, 671, 88 L.Ed.2d 677 (1986); *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, 1080, 1088, 89 L.Ed.2d 251 (1986); *Alberti v. Klevenhagen*, 790 F.2d 1220 (5th Cir. 1986). Specifically, in *Farmer v. Brennan*, *supra*, the U. S. Supreme Court held that a prison official cannot be found liable in a failure to protect case unless the official knows of or disregards an excessive risk to inmate's health or safety and that the official must both be aware of the facts for which the inference could be drawn that a substantial risk of serious harm existed and must have also drawn the inference.

In *Davidson v. Cannon, supra.*, that same Court dealt with a situation involving an inmate's failure to protect claim brought under § 1983 wherein the plaintiff alleged that a fellow inmate assaulted him after he sent a note to prison officials advising them that the inmate had threatened him. The official who received the note passed it along to his superior who forgot about it. The court held that forgetting about the threat alleged nothing more than negligence and is not sufficient to allege a violation of civil rights.

In the instant case, the plaintiff alleges in his complaint that he was "blind sided" by another inmate and that he informed a deputy of threats from inmate Strickland prior to the alleged attack and further asserts that other inmates also informed deputies of inmate Strickland's purported dangerous propensities. But, as discussed hereinabove, he fails to set forth specific facts surrounding the alleged attack or, more importantly, the "who, what, when, where" information supposedly relayed to deputies regarding the inmate prior to the attack. Plaintiff has alleged no specific facts which would prove that any deputy had

knowledge that he was subject to a serious risk of harm by being housed in the same area as inmate Strickland.  Likewise, no such facts have been revealed through discovery.[2]

Since there is no evidence that any deputy was ever aware of a serious risk of harm to plaintiff as a result of being in the same dorm as inmate Strickland, plaintiff cannot prove a failure-to-protect claim against anyone, much less the defendants.   Plaintiff has not presented any facts, other than his own bald allegations, that would show that any jail deputy knew of any risk of harm to plaintiff by other inmates or that such information was forwarded to any defendant.  Under *Babb v. Dorman*, 33 F.3d 472 (5th Cir. 1994), plaintiff is required to state "with factual detail and particularity the basis of his claim."  Plaintiff has not established that any deputy made the inference that plaintiff was in serious risk of harm or that any deputy forwarded this information to defendants.  Thus, no facts have been established, other than the plaintiff's own broad and self-serving assertions, to show that defendants knew of any risk of harm to plaintiff.

As to the plaintiff's claims against the defendants based on the adequacy of his medical care,[3] the constitutional rights of a pretrial detainee certainly may be violated if his serious medical needs are met with deliberate indifference on the part of penal authorities. *Thompson v. Upshur County, Texas,* 245 F.3d 447, 457 (5th Cir.2001). But the Fifth Circuit has held:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints,

---

2       When asked for copies of any and all documents supportive of his claim that deputies had been informed of the threats, the plaintiff responded: "None".  Exhibit "E", Response to Request No. 5.

3       Defendants note that in response to their written discovery, plaintiff claimed to have abandoned his claims against Dr. Inglese.  Exhibit "E", Response to Request No. 7.  But in an abundance of caution, defendants address those claims nevertheless.

> intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment. And, the failure to alleviate a significant risk that the official should have perceived, but did not is insufficient to show deliberate indifference.

*Domino v. Texas Department of Criminal Justice,* 239 F.3d 752, 756 (5th Cir.2001)(quotation marks and citations omitted). *See also Lauga v. St. Tammany Parish Sheriff's Office*, 2010 WL 1559089, *4 (E.D.La. 2010). As the Fifth Circuit has also noted:

> Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Furthermore, the decision whether to provide additional treatment is a classic example of a matter for medical judgment.

*Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir.2006)(footnote and quotation marks omitted).

The evidence tendered in connection with this Motion makes it clear that, not only were none of the defendants deliberately indifferent to the plaintiff's medical needs during his incarceration, but to the contrary, the plaintiff received a high level of medical attention during that time. See Exhibit "C" (affidavit/medical abstract of Dr. Inglese); Exhibit "D" (plaintiff's jail medical records). In addition, "a pretrial detainee's constitutional right to medical care is violated only if his *serious* medical needs are met with *deliberate indifference* on the part of penal authorities." *Carter*, *supra* at *3 (emphasis in original). Here, while the plaintiff has alleged permanent damage to his right eye, given plaintiff's prior medical history as summarized by Dr. Inglese, he has not established the necessary causative link, i.e., that he suffered any lasting physical harm from his alleged deprivations.

The defense of qualified immunity is a defense to protect the defendants not only against liability but also against suit. *Spann v. Rainey*, 987 F.2d 1110 (5th Cir. 1993). In

order to overcome a defense of qualified immunity, plaintiff's complaint must state more than mere conclusions.  The Fifth Circuit has said that a "heightened" standard is necessary. *Babb v. Dorman* 33 F.3d 472, 475 (5th Cir. 1994), *citing Elliott v. Perez*, 751 F.2d 1472 (5th Cir. 1985).  A plaintiff must plead with particularity facts that if proven would defeat the defense*. Elliott*, at 1479.  Plaintiff has made only unsubstantiated conclusionary allegations against the defendants and has failed to otherwise establish any basis of fact that would support his claims.

**4.      *Plaintiff's Individual-Capacity and Official-Capacity Claims Against Sheriff Strain Are Legally Deficient and Should Be Dismissed.***

It is well established that there is no liability on a supervisor's part under the civil rights law, including § 1983, based on a theory of *respondeat superior.  Monell v. Dep't of Social Services of New York City,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005); *Eason v. Thaler,* 73 F.3d 1322, 1327 (5th Cir. 1996).  Thus, Sheriff Strain cannot be held liable under § 1983 pursuant to a theory of *respondeat superior* or simply because of his general supervisory authority over his deputies.  *Oliver v. Collins*, 902 F.2d 278, 281 (5th Cir. 1990); *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Cir. 1985), *cert. denied* 471 U.S. 1126, 105 S.Ct. 2659, 86 L.Ed.2d 276 (1985).  In a case somewhat similar to this one, although admittedly less factually intense, another section of this Honorable Court concluded that a prisoner whose § 1983 claim was based upon a slip-and-fall in the jail shower had failed to establish the necessary "personal involvement" on the part of Sheriff Strain.  *Wetzel v. St. Tammany Parish Jail*, 610 F.Supp.2d 545, 550 (E.D.La. 2009).  *See also Lathers v. Nelson Coleman Correctional Center*, 2010 WL 1489903, *5 (E.D.La. 2010).  Thus, to the extent that the plaintiff's claims

are based or dependent upon Sheriff Strain's personal involvement in those allegations, they must fall.

Of course, as is true with most general rules, this requirement of personal involvement and rejection of vicarious liability is subject to exceptions that should be addressed.  First, it is acknowledged that under § 1983 official-capacity claims (as opposed to individual-capacity claims), an official such as Sheriff Strain can be held liable if it can be shown that he had in place "a policy or procedure that caused [the plaintiff's] injury." *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007), *cert. denied* 555 U.S. 813, 129 S.Ct. 42, 172 L.Ed.2d 21 (2008); *Davis v. Evangelist*, 2009 WL 2447897, *6 (E.D.La. 2009).  But, it is also true that "[a] plaintiff may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Colle v. Brazos County, Texas*, 981 F.2d 237, 245 (5th Cir. 1993).  Rather, he must specifically identify the policy or custom that allegedly caused the complained-of deprivation of his constitutional rights.  *Murray v. Town of Mansura*, 76 Fed.Appx. 547, 549, 2003 WL 22135637 (5th Cir. 2003); *Carter v. Strain*, 2009 WL 3231826, *2 (E.D.La. 2009).  As explained by the Fifth Circuit:

> In order to hold a municipality or a local government unit liable under Section 1983 for the misconduct of one of its employees, a plaintiff must initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted. To satisfy the cause in fact requirement, a plaintiff must allege that the custom or policy served as a moving force behind the constitutional violation at issue or that [his] injuries resulted from the execution of an official policy or custom. The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts.

*Spiller v. City of Texas City Police Department*, 130 F.3d 162, 167 (5th Cir.1997) (quotation marks, brackets, and citations omitted).

In this case, the plaintiff does make a vague and conclusory assertion regarding "pattern and practice." *See* Rec. doc. 29, at ¶ 36.  But, at no point in his pleading does the plaintiff go beyond that phrase itself to actually specify the particular "policy", "practice", or "custom" in question, nor has such specification occurred in the discovery process.  Clearly, the plaintiff's bald and general characterizations, without any elaboration, fail to meet the test that a § 1983 official-capacity claim against a governmental official must "state with factual detail and particularity the basis of the claim." *Babb v. Dorman,* 33 F.3d 472, 477 (5th Cir. 1994).  It also certainly does not satisfy the "specific facts" requirement set out by the *Spiller* court as to a policy-and-procedure claim.  *See Brown v. Gusman*, 2010 WL 2545958, *2 (E.D.La. 2010); *see also Washington*, *supra* at *6, where the court noted that the plaintiff had failed to "specifically identify an ordinance, regulation, or well-settled custom or policy in violation of her constitutional rights."  And the plaintiff also fails to explain how any specific policy or procedure "served as a moving force" behind a particular alleged constitutional violation.  In *Davis v. Evangelist*, *supra*, another division of this Court declared in a similar factual context that "[t]he plaintiff has pointed to no evidence to support this blatantly conclusory assertion."  The same is true here.

To summarize, the plaintiff has not made any allegations that Sheriff Strain himself was personally involved in the asserted constitutional deprivations and, under § 1983, Sheriff Strain cannot be vicariously liable for any actions of his subordinates or employees.  To the extent that the plaintiff's allegations raise the issues of inadequate policies & procedures, failure-to-train, or any other *Monell*-type claim and thereby fall outside of this general rule, the allegations fall far short of the specificity requirement set out by *Spiller*

and no supportive facts whatsoever have been identified or adduced.  For any or all of these reasons, the plaintiff's § 1983 claims against Sheriff Strain should be dismissed.

**5.      *Plaintiff's State-Law Claims***

The various state-law claims asserted by the plaintiff in this matter should also be dismissed.  According to 28 U.S.C. s 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  Since it is anticipated that the Court will grant the instant motion as to plaintiff's federal-law claim, this statutory language is applicable to this case.  In addition, "[w]hen a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims." *Jackson v. Mizzel*, 361 F. App'x 622, 627 n. 26, 2010 WL 183490 (5th Cir. 2010), quoting *Bass v. Parkwood Hospital,* 180 F.3d 234, 246 (5th Cir. 1999). *See also Worley v. Louisiana*, 2012 WL 218992, * 4 (E.D.La. 2012).  Thus, the plaintiff's state-law claims should be dismissed because, once his federal-law claims have been rejected, no grounds for federal-court jurisdiction in this matter would remain.

<u>**Conclusion**</u>

For the clear and uncontroverted reasons set out above, the plaintiff's assertion of claims against the defendants pursuant to 42 U.S.C. § 1983 is barred by the exhaustion-of-administrative-remedies requirement of the PLRA and/or by application of the qualified-immunity doctrine to the facts of this case.  And since § 1983 is the only basis for federal jurisdiction in this case, any remaining state-law claims should be dismissed.  Thus, as supported and documented in the attached Statement of Uncontested Material Facts and the accompanying exhibits, the defendants request this Honorable Court to grant their

Motion for Summary Judgment, for the specific grounds urged herein, and dismiss plaintiff's suit against them, with prejudice and at plaintiff's cost.

Respectfully submitted:

**TALLEY, ANTHONY, HUGHES & KNIGHT, L.L.C.**

BY:___/s/ Gary L. Hanes_____
        CHARLES M. HUGHES, JR. (#14382)
        GARY L. HANES (#14341)
2250 7th Street
Mandeville, Louisiana 70471
Telephone: (985) 624-5010
Facsimile: (985) 624-5306
Email: gary.hanes@talleyanthony.com

Attorneys for Defendants
Rodney J. Strain, Jr., in his capacity as
Sheriff of St. Tammany Parish, Major
Gregory Longino, Corporal Patrick Smith,
and Dr. R. Demaree Inglese

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2012, a copy of the foregoing Memorandum of Law in Support of Defendants' Motion for Summary Judgment was filed electronically with the Clerk of Court using the CM/ECF system.  I also certify that a photocopy of this filing and notice of electronic filing will be mailed this date to plaintiff herein, as a pro se non-CM/ECF participant, via U.S. Mail, postage prepaid, at the address on file with the Clerk.

___/s/ Gary L. Hanes_____
        GARY L. HANES