UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MARK THOMAS HATCHER                                CIVIL ACTION

VERSUS                                             NO. 11-116-SS

ST. TAMMANY JAIL, ET AL.

## ORDER AND REASONS

Plaintiff, Mark Thomas Hatcher, a state inmate, filed this *pro se* and *in forma pauperis* civil action pursuant to 42 U.S.C. § 1983. In his original complaint, he named the "St. Tammany Jail" as the sole defendant.[1] The Court notified him that the jail was not a proper defendant[2] and ordered him to file an amended complaint naming the actual defendant or defendants who allegedly violated his rights.[3] Plaintiff thereafter filed an amended complaint naming Sheriff Rodney J. Strain, Jr., and Dr. Richard D. Inglese as defendants.[4] Plaintiff then retained counsel and, through counsel, filed a second amended complaint adding Warden Gregory Longino, "Corporal Smith," and "John Doe"

---

[1] Rec. Doc. 3.

[2] "The St. Tammany Parish Jail is a building, not a 'person' subject to suit under § 1983." Roper v. Strain, Civ. Action No. 10-341, 2010 WL 923151, at *2 n. 2 (E.D. La. Mar. 8, 2010); see also Miller v. St. Tammany Parish Jail, Civ. Action No. 08-4694, 2008 WL 5111146, at *2 n.3 (E.D. La. Dec. 4, 2008); Williamson v. Louisiana, Civ. Action No. 08-4598, 2008 WL 5082911, at *3 (E.D. La. Nov. 24, 2008); Smith v. St. Tammany Parish Sheriff's Office, Civ. Action No. 07-3525, 2008 WL 347801, at *2 (E.D. La. Feb. 6, 2008).

[3] Rec. Doc. 4.

[4] Rec. Doc. 5.

as additional defendants and adding additional claims under state law.[5]  Plaintiff's counsel subsequently withdrew,[6] and plaintiff is now once again proceeding *pro se*.

In this lawsuit, plaintiff claims the defendants violated his rights under federal law by subjecting him to "enhanced punishment" when they (1) "orchestrated" for a fellow inmate to assault him and failed to protect him from that assault and (2) acted with deliberate indifference to his need for medical attention for the resulting injuries.  Further, as noted, he also asserts various related claims under state law.

The defendants have now filed a motion for summary judgment pursuant to Fed.R.Civ.P. 56.[7] Plaintiff has opposed that motion.[8]  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge.[9]

## I.  Summary Judgment Standards

In reviewing a motion for summary judgment, the Court may grant the motion when no genuine issue of material fact exists and the mover is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).  There is no "genuine issue" when the record taken as a whole could not lead a rational trier of fact to find for the nonmovant.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

---

[5]  Rec. Doc. 29.

[6]  Rec. Docs. 32 and 33.

[7]  Rec. Doc. 40.

[8]  Rec. Doc. 43.

[9]  Rec. Doc. 22.

"Procedurally, the party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." Taita Chemical Co., Ltd. v. Westlake Styrene Corp., 246 F.3d 377, 385 (5th Cir. 2001) (quotation marks and brackets omitted). The party opposing summary judgment must then "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56); see also Provident Life and Accident Ins. Co. v. Goel, 274 F.3d 984, 991 (5th Cir. 2001). The Court has no duty to search the record for evidence to support a party's opposition to summary judgment; rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim." Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998). Conclusory statements, speculation, and unsubstantiated assertions are not competent summary judgment evidence and will not suffice to defeat a properly supported motion for summary judgment. Id.; Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1429 (5th Cir. 1996).

## II.  Federal Claims

The defendants argue that they are entitled to judgment as a matter of law with respect to plaintiff's federal claims because he failed to exhaust his administrative remedies before filing this lawsuit. They are correct.

The Prison Litigation Reform Act of 1995 ("PLRA"), as amended, provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[10] The United Fifth Circuit Court of Appeals has noted: "'Exhaust' is defined as 'to take complete advantage of (legal remedies).'" Underwood v. Wilson, 151 F.3d 292, 294 (5th Cir. 1998) (quoting Webster's New Int'l Dictionary 796 (3rd ed. 1981)). Accordingly, an inmate's administrative remedies are not exhausted under § 1997e(a) until he has pursued his grievance through all steps of a multi-step administrative remedy procedure. Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).

Federal courts have taken a strict approach to the exhaustion requirement. For example, the United States Supreme Court held that the exhaustion requirement is "mandatory," Porter v. Nussle, 534 U.S. 516, 524 (2002), and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong," id. at 532. The Supreme Court further held that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001). The Fifth Circuit therefore concluded that "[q]uibbles about the nature of a prisoner's complaint, the type of remedy sought, and the sufficiency or breadth of prison grievance procedures were laid to rest in Booth." Wright, 260 F.3d at 358.

---

[10] "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h).

In support of their motion, the defendants submitted the affidavit of Warden Gregory Longino. In that affidavit, Longino detailed the administrative grievance process in place at the time plaintiff was incarcerated at the St. Tammany Parish Jail. Under that process, an inmate first files a "complaint." If he is dissatisfied with the response to that complaint, he may then proceed to jail's official grievance process, the Administrative Remedy Procedure. Longino explained:

7. The St. Tammany Parish Jail has an administrative grievance process called the Administrative Remedy Procedure (ARP) in place and available to all inmates incarcerated at the St. Tammany Parish Jail and was available to all inmates when the incident upon which plaintiff's complaint is based occurred.

8. All inmates are entitled to use the jail's administrative remedy procedure, including Department of Corrections inmates, parish jail inmates, and pre-trial detainees.

9. A summary of the jail's administrative remedy procedure may be found in the St. Tammany Parish Jail Inmate Handbook that is given to every inmate who is booked into the St. Tammany Parish Jail. ...

10. A copy of the complete administrative remedy procedure could also be found in the St. Tammany Parish Jail law library wherein access to the procedure is available to all inmates and was available to all inmates when the incident upon which plaintiff's complaint is based occurred.

11. Both the Inmate Complaint Process and the Administrative Remedy Procedure were posted in every housing unit of the St. Tammany Parish Jail when the incident upon which plaintiff's complaint is based occurred.

12. The complaint form and grievance forms were available in every housing unit at the St. Tammany Parish Jail and were made easily accessible to all inmates in June of 2009.

13. An inmate could also ask any jail deputy for the complaint or grievance forms.

14. To initiate the grievance process, an inmate must fill out the inmate grievance form, which is made easily accessible to all inmates in the jail. In lieu of the

5

form, an inmate may submit a written communication containing the words "This is a grievance though the ARP."

15. Under the grievance procedure available at the time of the alleged incident, a grievance must be filed within ninety (90) days from the date the incident giving rise to the grievance occurred. Any grievance filed more than ninety (90) days after the incident is rejected as untimely.

16. The First Level Respondent must respond to the inmate's grievance within fifteen (15) days from the date the request is referred to me. This step is designated as the First Step Review.

17. If an inmate is not satisfied with the results of the First Step Review, the inmate may appeal to me within five (5) days of the inmate's receipt of the response by the First Level Respondent. This step is designated the Second Step Review. The Warden has twenty-five (25) working days to reply to the appeal.

18. If an inmate does not like the results of the Second Step Review, the inmate may appeal to the Sheriff within five (5) days of the inmate's receipt of the reply. The Sheriff has forty (40) working days to reply to the appeal.

19. If the inmate is not satisfied with the results of this final level of review of the Jail's administrative grievance process, he may then file suit.

20. The inmate, Warden, or Sheriff may request a five (5) working day extension of time in responding to the grievance.

21. If an inmate does not receive a response to a grievance or appeal within the time allowed by the First Level Respondent, Warden or the Sheriff, an inmate would still be required to follow through to the next step of the grievance process.

....

23. In the case of an inmate complaint about medical care, inmate complaints and grievances are forwarded directly to the jail medical staff.

24. Neither the Sheriff nor any other Sheriff's deputy has the authority to make medical decisions. Medical decisions are made by personnel in the Jail's medical department.

25. The medical department has the responsibility of acting upon and responding to the inmate's grievance regarding medical care.

26. Inmate Mark Thomas Hatcher never filed any grievance concerning his claims that deputies failed to protect him from another inmate of [sic] that he had been [sic] proper medical treatment by Jail medical personnel as required under the St. Tammany Jail's Administrative Remedy Procedure and therefore, never appealed any such grievance.

27. Inmate Mark Thomas Hatcher did not exhaust all his administrative remedies as required by the St. Tammany Parish Jail Administrative Remedy Procedure concerning his claims which are the subject of his complaint prior to filing his lawsuit.[11]

Although plaintiff filed a memorandum in opposition to the defendants' motion for summary judgment, he neither addressed the exhaustion issue in that memorandum nor submitted any evidence demonstrating that he exhausted his administrative remedies at the St. Tammany Parish Jail. As a result, the Court finds that no genuine issue of material fact remains in dispute concerning plaintiff's failure to comply with 42 U.S.C. § 1997e(a). That is fatal to his federal claims, because the United States Fifth Circuit Court of Appeals has held:

> Absent a valid defense to the exhaustion requirement, the statutory requirement enacted by Congress that administrative remedies be exhausted *before* the filing of suit should be imposed. To hold otherwise would encourage premature filing by potential litigants, thus undermining Congress' purpose in passing the PLRA, which was to provide the federal courts some relief from frivolous prisoner litigation.

Wendell v. Asher, 162 F.3d 887, 890-91 (5th Cir. 1998) (citations omitted). Therefore, it is appropriate to dismiss plaintiff's federal claims without prejudice, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915. See Underwood v. Wilson, 151 F.3d

---

[11] Rec. Doc. 40-4.

292, 296 (5th Cir. 1998); Wiley v. Mangrum, 146 Fed. App'x 757 (5th Cir. 2005); Johnson v. Travis, Civ. Action No. 07-213, 2007 WL 1433896, at *2 (E.D. La. May 14, 2007).

### III.  State Law Claims

The defendants further argue that if plaintiff's federal claims are dismissed based on his failure to exhaust his administrative remedies, the Court should decline to exercise supplemental jurisdiction over his state law claims.  Once again, the defendants are correct.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."); see also Jackson v. Mizzel, 361 Fed. App'x 622, 627 (5th Cir. 2010) ("Because [the plaintiff] states not one valid federal claim, the district court properly declined jurisdiction over his Louisiana causes of action."); Bass v. Parkwood Hospital, 180 F.3d 234, 246 (5th Cir. 1999) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.").  Therefore, it is appropriate to dismiss plaintiff's state law claims without prejudice.

Accordingly,

**IT IS ORDERED** that defendants' motion for summary judgment, Rec. Doc. 40, is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff's federal civil rights claims are dismissed without prejudice, but with prejudice for the purpose of proceeding *in forma pauperis* pursuant to 28 U.S.C. § 1915.

**IT IS FURTHER ORDERED** that plaintiff's state law claims are dismissed without prejudice.

New Orleans, Louisiana, this twenty-ninth day of February, 2012.

                                                   **SALLY SHUSHAN**
                                                   **UNITED STATES MAGISTRATE JUDGE**